UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------X

IN RE:

Iliya Honovich,

                       DEBTOR.

-----------------------------------------------------X

Hearing Date:  October 4, 2017

Hearing Time:  10:30 a.m.

CASE NO.: 17-41789-nhl

Chapter: 13

JUDGE: NANCY HERSHEY LORD

## NOTICE OF MOTION FOR ORDER
## GRANTING RELIEF FROM AUTOMATIC STAY

**SIRS:**

     **PLEASE TAKE NOTICE** that Federal National Mortgage Association ("Fannie Mae") ("Movant") seeks relief from the automatic stay as to the property located at 3021 Brighton 7th Street, Brooklyn, NY 11235, and will move before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge in the United States Bankruptcy Court for the Eastern District of New York located at 271 Cadman Plaza East, Brooklyn, Courtroom 3577, NY 11201 on October 4, 2017 at 10:30 a.m., or as soon thereafter as counsel may be heard, for an Order:

     1. Pursuant to Bankruptcy Rule 4001, 11 U.S.C. Section 105(a) and 11 U.S.C. Section 362(d)(1), granting Movant, its successors and/or assigns, relief from the automatic stay due to the Debtor's failure to make post-petition payments, and/or offer and provide Movant with adequate protection for its security; and

     2. Granting Movant such other and further relief as is just and proper.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief herein requested shall be in writing, shall state with particularity the grounds for the objection, shall be filed with the Clerk of the Bankruptcy Court and served upon, the undersigned counsel for the Movant seven (7) days prior to the return date and upon any other person whose interests would be affected if the objection is sustained.

Dated: August 10, 2017
      Plainview, NY

Respectfully submitted,

ROSICKI, ROSICKI & ASSOCIATES, P.C.
By: Seung Woo Lee, Esq.
Attorneys for Movant
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585

TO:
Iliya Honovich
Debtor
1809 Voorhies Avenue
Brooklyn, NY 11235

Iliya Honovich
Debtor
3021 Brighton 7th Street
Brooklyn, NY 11235

Gary C Fischoff, Esq.
Attorney for Debtor
6901 Jericho Turnpike
Suite 230
Syosset, NY 11791

Marianne DeRosa, Esq.
Trustee
125 Jericho Tpke
Suite 105
Jericho, NY 11753

U.S. Trustee
Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
IN RE:                                    CASE NO.: 17-41789-nhl

Iliya Honovich,                           Chapter: 13

          DEBTOR.          JUDGE: NANCY HERSHEY LORD
--------------------------------------------------X

## ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

      Upon the Application dated August 10, 2017, (the "Application") of Federal National

Mortgage Association ("Fannie Mae") (the "Movant"), by its attorneys, Rosicki, Rosicki &

Associates, P.C., seeking an Order: (i) modifying and terminating the automatic stay to permit

the Movant to exercise all of its rights and remedies with respect to certain collateral consisting

of the real property known as 3021 Brighton 7th Street, Brooklyn, NY 11235 (the "Premises");

and (ii) granting Movant such other and further relief as the Court deems just and proper; and

      The Application having come before this Court to be heard on October 4, 2017; and no

opposition to the relief requested having been heard; and in consideration of the foregoing, and

upon the affidavit of service filed with the Court, and after due deliberation, the relief requested

appearing reasonable, proper and warranted in fact and by law under Section 362(d)(1) of the

Code to permit Movant to exercise all of its rights and remedies under applicable law with

respect to the Premises, it is hereby

      **ORDERED** that the Application of Movant is granted modifying the automatic stay to

allow it, its successors and/or assigns, to pursue any and all action and to exercise its remedies as

to the property known as 3021 Brighton 7th Street, Brooklyn, NY 11235 and it is further

      **ORDERED** that in the event a foreclosure sale of the concerned Premises results in a

deficiency, Movant, its successors and/or assigns, may amend any timely proof of claim filed

herein consistent with such deficiency, and it is further

**ORDERED** that in the event a foreclosure sale of the concerned Premises results in a surplus, the Case Trustee shall be notified.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

Iliya Honovich,

                    Debtor.

# ORDER GRANTING RELIEF FROM
# THE AUTOMATIC STAY

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
**Attorneys for Movant**
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
IN RE:                                          CASE NO.: 17-41789-nhl

Iliya Honovich,                                 Chapter: 13

                          DEBTOR.               JUDGE: NANCY HERSHEY LORD
-------------------------------------------------X

## APPLICATION IN SUPPORT OF AN ORDER
## MODIFYING AND TERMINATING THE AUTOMATIC STAY

**TO:    THE HONORABLE NANCY HERSHEY LORD,
         UNITED STATES BANKRUPTCY JUDGE:**

The Application of Federal National Mortgage Association ("Fannie Mae") ("Movant"),

by its attorneys, Rosicki, Rosicki & Associates, P.C., respectfully represents and says:

Seung Woo Lee, an attorney at law duly admitted to practice before this Court and the

Courts of the State of New York, hereby affirms the following to be true under penalty of

perjury:

## I.    RELIEF REQUESTED

1. This is a contested matter brought pursuant to Federal Rules of Bankruptcy Procedure,

Rules 4001, 9013 and 9014 and Sections 361, 362(d) of Title 11 of the United States Code, 11

U.S.C. Section 101 et. seq. (the "Bankruptcy Code"), for an Order: (i) modifying and terminating

the automatic stay to permit Movant to exercise all of its rights and remedies with respect to

certain collateral known as 3021 Brighton 7th Street, Brooklyn, NY 11235 (the "Premises"), and

(ii) granting Movant such other and further relief as the Court deems just and proper.

## II.    **BACKGROUND**

2.   Movant is the owner of a Note and Mortgage, dated June 20, 2003, given by Iliya Honovich (the "Debtor") in the original principal amount of $341,100.00 pledging the Premises as security.   Copies of the Note, endorsed to blank, Mortgage and Assignments are annexed hereto as Exhibit "A".   Based upon information provided by Seterus, Inc., servicer for Fannie Mae, its custodian is in physical possession of the original note.

3.   On April 13, 2017, the Debtor filed with the Clerk of this Court a petition for relief under Chapter 13 of the Bankruptcy Code.

## III.    **THE APPLICATION**

4.   As required by E.D.N.Y Administrative Order #533, the completed motion for relief Worksheet (the "Worksheet") is annexed hereto as Exhibit "B".

5.   According to the Movant, the Debtor is in default, post-petition, under the terms of the Note and Mortgage for failure to make timely on-going post-payments in the amount of $2,650.68 each for the May 1, 2017 through the June 1, 2017 payments; $2,732.50 for the July 1, 2017 payment, and the loan is now post-petition due for May 1, 2017.

6.   The post-petition amount in default per the within Worksheet is $8,033.86.   In the event the within Application is adjourned to a later date, the Movant requests that the motion be amended to include as post-petition arrearage, all payments that accrue from the date of the Worksheet until the adjourned hearing.

7.   Section 362(d)(1) of the Bankruptcy Code provides in pertinent part that the Court shall grant relief from the stay imposed by Section 362(a) "for cause, including lack of adequate protection of an interest in property ..." As set forth herein, cause exists to vacate the automatic stay as the Debtor has failed to make monthly post-petition mortgage payments to Movant.

8. Under Section 362(d)(1), failure to make post-petition mortgage payments constitutes "cause" to modify the automatic stay. *See In re Fennell*, 495 B.R. 232, 239 (Bankr. E.D.N.Y. 2012), citing *In re Taylor*, 151 B.R. 646, 648 (Bankr. E.D.N.Y. 1993) "[a] debtor's failure to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the automatic stay;" *see also In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008) "[t]o be sure, the failure to make mortgage payments constitutes "cause" for relief from the automatic stay and is one of the best examples of a "lack of adequate protection" under Section 362(d)(1) of the Bankruptcy Code".

9. Accordingly, grounds exist to vacate the stay in Debtor's case and Movant therefore requests that the automatic stay imposed under Section 362(a) of the Bankruptcy Code be modified and terminated for cause in accordance with Section 362(d) of the Bankruptcy Code to permit Movant to pursue their rights under the Mortgage and applicable law, including without limitation, the commencement and consummation of a foreclosure action and/or eviction proceeding.

## IV.    CONCLUSION

10. Relief from the stay is warranted under Section 362(d). Accordingly, the automatic stay must be modified to permit Movant to assert its rights in the Premises, including, but not limited to, the consummation of a foreclosure sale and eviction action.

**WHEREFORE**, Movant respectfully requests that an Order be granted modifying the automatic stay as to it, its successors and/or assigns, permitting maintenance of mortgage foreclosure and eviction proceedings with respect to the Premises; and for such other and further relief as this Court may deem just and proper.

Dated: August 10, 2017
       Plainview, NY

                                         Respectfully submitted,

                                         ROSICKI, ROSICKI & ASSOCIATES, P.C.
                                         By: Seung Woo Lee, Esq.
                                         Attorneys for Movant
                                         Main Office 51 E Bethpage Road
                                       Plainview, NY 11803
                                       516-741-2585

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

Iliya Honovich,

Debtor.

## NOTICE OF MOTIONAND APPLICATION
## IN SUPPORT OF ENTRY OF AN ORDER VACATING STAY

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
**Attorneys for Movant**
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

IN RE:                                              CASE NO.: 17-41789-nhl

  Iliya Honovich,                                   Chapter: 13

                     DEBTOR.          **AFFIDAVIT OF SERVICE**

-----------------------------------------------------X

STATE OF NEW YORK    )
                    ) ss:

COUNTY OF NASSAU    )

      Alicia McNamee, being duly sworn, deposes and says:

      I am not a party to this action, am over 18 years of age and reside in Suffolk County, New York.

      On August, 2017, I served the within Notice of Motion, Motion for Modification of the Automatic Stay and Proposed Order Granting Relief from the Automatic Stay on the following parties by depositing a true copy thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

Iliya Honovich
1809 Voorhies Avenue
Brooklyn, NY 11235

Iliya Honovich
3021 Brighton 7th Street,
Brooklyn, NY 11235

Gary C Fischoff Esq.
6901 Jericho Turnpike
Suite 230
Syosset, NY 11791

Marianne DeRosa Esq.
125 Jericho Tpke
Suite 105
Jericho, NY 11753

U.S. Trustee
Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

_Alicia McNamee_
Alicia McNamee

Sworn to before me this
10 day of August 2017

_____
NOTARY PUBLIC

ROSEMARIE E. FORTINO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01FO6241639
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPRIES MARCH 23, 2019

## NOTICE OF MOTION COVER SHEET

NAME OF DEBTOR
Iliya Honovich

CASE NUMBER
17-41789-nhl

PLAINTIFF/MOVANT
Federal National Mortgage Association
("Fannie Mae")

DEFENDANT/RESPONDENT

ATTORNEYS
Rosicki, Rosicki & Associates, P.C.
Main Office 51 E Bethpage Road
Plainview, NY 11803

ATTORNEYS IF KNOWN
Gary C Fischoff, Esq.
6901 Jericho Turnpike
Suite 230
Syosset, NY 11791

PRINT NAME OF ATTORNEY
Seung Woo Lee, Esq.

SIGNATURE

NATURE OF SUIT
(Check all Boxes That Apply to This Motion

☒    To Grant Relief from the Automatic Stay
       11 U.S.C. Section of 362(d)  ($181.00 fee required)

☐    To Withdraw the Reference of a Case
       11 U.S.C. Section 157(d)    ($75.00 fee required)

☐    To Compel Abandonment of Property
       of the Estate - B.R. 6007 (b) ($75.00 fee required)

☐    To Convert (fee not required)

☐    To Dismiss (fee not required)

☐    To Assume/Reject (fee not required)

☐    To Extend Time to Object to Discharge/Dischargeability

☐    To Extend Exclusivity Period to File Plan, Etc.

☐    Objections to Claims

☐    For Summary Judgment

☐    Other- Specify Type of Motion _____

FILING FEE (Check One)            ☐  Fee Attached         ☒  Fee Paid On Line

# ROSICKI, ROSICKI & ASSOCIATES, P.C.
### ATTORNEYS AT LAW
### Main Office: 51 East Bethpage Road
### Plainview, New York 11803
*Telephone (516) 741-2585*
*Facsimile (516) 873-7243*
We are a debt collector and are attempting to collect a debt.

*Any information obtained may be used for that purpose.*

August 10, 2017

Chambers of the Honorable Nancy Hershey Lord
United States Bankruptcy Court
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

**Re:    Iliya Honovich**
**Bankruptcy Case #17-41789-nhl**
**Chapter 13**

Dear Sir or Madam:

Enclosed herewith you will find one Chambers Copy of a Notice of Motion and Motion for Modification of the Automatic Stay and one separate copy of a proposed order. The appropriate filing fee in the amount of $181.00 is paid on line.

Please file this motion with the Court as it is scheduled for October 4, 2017.

Your assistance is greatly appreciated.

Very truly yours,

ROSICKI, ROSICKI & ASSOCIATES, P.C.

_____
Alicia McNamee
Paralegal

Enclosures

Exhibit "A"



# ORIGINAl

## NOTE



**June 20 2003**                                    BROOKLYN            , NEW YORK    .C.
                                                                    [City]                    [State]

3021 BRIGHTON 7TH STREET, BROOKLYN NY 11235
                                                (Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   341,100.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is    GFI MORTGAGE BANKERS, INC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of   5.8750  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the **1st**   day of each month beginning on **August 1      2003**   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **July 1 2033**        I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at      **50 BROADWAY, NEW YORK NEW YORK 10004**
                                or a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $                   2,017.74

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of         **15**   calendar days after the date is due, I will pay a late charge to the Note Holder. The Amount of the charge will be **2.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note whether or not a lawsuit is brought to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.



**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by the Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender,s prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument If I do not make the required payment during that period, Lender may act to enforce its right under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

*Iliya Honovich*
_____    (Seal)
ILIYA HONOVICH                                Borrower

_____    (Seal)
                                             Borrower

_____    (Seal)
                                             Borrower

                                             (Seal)
                                             Borrower

                                        [Sign Original Only]

WITHOUT RECOURSE PAY TO THE ORDER OF:
                    Washington Mutual Bank, F.A.

                                        Pay to the order of
BY: _____
                                        Without Recourse
ABRAHAM EISNER, EXECUTIVE VICE PRESIDENT     WASHINGTON MUTUAL BANK, FA
GFI MORTGAGE BANKERS, INC.
                                        By _____
                                             LETA HUTCHINSON
                                             Assistant Vice President



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 23 |
|---|---|---|
| Document ID: 2003112401067003 | Document Date: 06-20-2003 | Preparation Date: 11-24-2003 |

Document Type: MORTGAGE
Document Page Count: 22

| PRESENTER: | RETURN TO: |
|---|---|
| REALTY-SKYLINE RESEARCH LLC<br>175 REMSEN STREET<br>LIGHTHOUSE LAND 03-1999 (SR)<br>BROOKLYN, NY 11201<br>718-306-1100 | GFI MORTGAGE BANKERS INC<br>50 BROADWAY 6TH FL<br>NEW YORK, NY 10004<br>ATTN: POST CLOSING |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8677 | 97 | Entire Lot | 3021 BRIGHTON 7 STREET |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year____ Reel___ Page____ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| ILIYA HONOVICH<br>8747 BAY PKWY #4<br>BROOKLYN, NY 11214 | GFI MORTGAGE BANKERS, INC<br>50 BROADWAY<br>NEW YORK, NY 10004 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 147.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 341,100.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 341,100.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 1,705.50 | $ | 0.00 |
| City (Additional): | $ | 3,411.00 | | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 852.75 | |
| MTA: | $ | 852.75 | |
| NYCTA: | $ | 0.00 | |
| TOTAL: | $ | 6,822.00 | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**

Recorded/Filed          04-20-2004 09:15
City Register File No.(CRFN):
                              2004000239405

*Rochelle Patrice*

*City Register Official Signature*

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



### RECORDING AND ENDORSEMENT COVER PAGE

| | | PAGE 1 OF 23 |
|---|---|---|
| Document ID: 2003112401067003 | Document Date: 06-20-2003 | Preparation Date: 11-24-2003 |

Document Type: MORTGAGE
Document Page Count: 22

| PRESENTER: | RETURN TO: |
|---|---|
| REALTY-SKYLINE RESEARCH LLC | GFI MORTGAGE BANKERS INC |
| 175 REMSEN STREET | 50 BROADWAY 6TH FL. |
| LIGHTHOUSE LAND 03-1999 (SR) | NEW YORK, NY 10004 |
| BROOKLYN, NY 11201 | ATTN: POST CLOSING |
| 718-306-1100 | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8677 | 97 | Entire Lot | 3021 BRIGHTON 7 STREET |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN _____ *or* Document ID. __ __ __ *or* __ __. Year _____ Reel __ Page ____ *or* File Number____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| ILIYA HONOVICH | GFI MORTGAGE BANKERS, INC |
| 8747 BAY PKWY #4 | 50 BROADWAY |
| BROOKLYN, NY 11214 | NEW YORK, NY 10004 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 147.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 341,100.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 341,100.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 1,705.50 | $ | 0.00 |
| City (Additional): | $ | 3,411.00 | | |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 852.75 | | |
| MTA: | $ | 852.75 | | |
| NYCTA: | $ | 0.00 | | |
| TOTAL: | $ | 6,822.00 | | |

After Recording Return To:

GFI MORTGAGE BANKERS, INC.
50 BROADWAY 6TH FLOOR
NEW YORK, NY 10004
ATTN: POST CLOSING DEPT

# ORIG1NAL

—————————————— [Space Above This Line For Recording Data] ——————————

## MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated **June 20 2003**                    , together with all
Riders to this document, will be called the "Security Instrument."

(B) "Borrower." **ILIYA   HONOVICH**
whose address is  **8747 BAY PARKWAY, #4A, BROOKLYN, NY 11214**
, sometimes will be called "Borrower"

(C) "Lender." GFI MORTGAGE BANKERS, INC. will be called "Lender." Lender is a corporation or association
which exists under the laws of The State of NEW YORK. Lender's address is 50 Broadway New York NY 10004.

(D) "Note." The note signed by Borrower and dated **June 20 2003**                    will be called the "Note."
The Note shows that I owe Lender **Three Hundred Forty-One Thousand, One Hundred and No/100 -------**

Dollars (U.S.$      **341,100.00**          ) plus interest and other amounts that may be payable. I have
promised to pay this debt in Periodic Payments and to pay the debt in full by ,  **July 1,2033**
(E) "Property." The property that is described below in the section titled "Description of the Property," will be
called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights
in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders."
The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Occupancy Rider |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | ☒ Other [Specify]  __SCHEDULE A__ |

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033

1/01     (page 1 of 19 pages)                         j\ñode\mtg01ny.hpb

# SCHEDULE A
## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City of New York, bounded and described as follows;

BEGINNING at a point on the easterly side of East 7th Street a/k/a Brighton 7th Street, distant 162 feet southerly from the corner formed by the intersection of the easterly side of East 7th Street a/k/a Brighton 7th Street with the southerly side of Ocean View Avenue;

(1) RUNNING THENCE easterly at right angles to East 7th Street, 60 feet;

(2) THENCE southerly parallel with East 7th Street, 23 feet;

(3) THENCE still southerly, 80.02 feet to a point 59.40 feet easterly from the easterly side of East 7th Street measured on a line drawn at right angles thereto from a point therein, distant 31 feet southerly from the point of beginning;

(4) THENCE westerly at right angles to East 7th Street, 59.41 feet to the easterly side of East 7th Street, 31 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY: Premises more particularly known as 3021 Brighton 7th Street, Brooklyn, New York, known as Block 8677, Lot(s) 97.

**FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK**

(I) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

(M) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033

1/01    (page 2 of I 9 pages'

jf\boiler\mtg02nv.hpb

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## 1)DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below

(A) The Property which is located at **3021 BRIGHTON 7TH STREET**
**BROOKLYN**                                        New York    **11235**

This Property is in    **KINGS**                    County. It has the following legal description:

**SEE SCHEDULE A ANNEXED HERETO AND MADE A PART HEREOF.**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3033

1/01      (page 3 of 19 pages)

jft\boiler\mtg03ny.hpb

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    FORM 3033

jfhbollerumg04ny.hpb

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033

1/01    (page 5 of 19 pages)

jnbolls/mtg05ny.hpb

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day "that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033

1/01 (page 6 of 19 pages)

jftbailar\mtg06ny

Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.
When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3033

1/01     (page 7 of 19 pages)

jf\boiler\mtg07ny.hpb

the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033

1/01    (page 8 of 19 pages)

jf3bollerimtg08ny.hpb

the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3033

1/01 (page 9 of 19 pages)

jl\boiler\mtg09ny.hpb

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined In Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.
Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.
I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay Interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.
If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033

jh\boilar\mtg1Ohy.hpb

If substantially equivalent Mortgage insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (B.) such Mortgage Insurance is obtained; (C.) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (B.) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (B.) to request and obtain cancellation of the Mortgage Insurance, (C.) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3033

1/01      (page 11 of 19 pages)

ifboiler\mtg11ny.hpb

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.
In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.
In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as

NEW: YORK {Single F mily--Fannie Mae Frddie Mac UNI I OR\1 IN STRUMEN-1 Form 3033

1/01 (page 12 of 19 pages)

defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**
(a) **Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.
Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (I) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.
(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.
Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033

1/01    (page 13 of 19 pages)

jf\boiler\mtg13ny.hpb

Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033

1/01    (page 14 of 19 pages)

jf\boiler\mtg14ny.hpb

written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033

1/01    (page 15 of 19 pages)

jhboilertmtg15ny.hob

requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033

1/01 (page 16 of 19 pages)

jf\boiler\mtg16ny.hpb

asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:
(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;
(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

      (1) The promise or agreement that I failed to keep or the default that has occurred;

      (2) The action that I must take to correct that default;

      (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

      (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3033

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper of ficial records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

EW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033

1/01    (page 18 of 19 pages)

BY SIGNING BELOW, 1 accept and agree to the promises and agreements contained in pages 1 through 19 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          *Iliya Honovich*                    (Seal)
                                            ILIYA   HONOVICH                   -Borrower

_____          _____   (Seal)
                                                                              -Borrower

_____          _____   (Seal)
                                                                              -Borrower

_____          _____   (Seal)
                                                                              -Borrower


————————————————    [Space Below This Line For Acknowledgment] ————————————

STATE OF NEW YORK,              **KINGS**        County ss:

On this  **20th**     day of   **June** ,  **2003** , before me the undersigned, a Notary Public in and for said State personally appeared  **ILIYA   HONOVICH**

personally known to me or proved to me on the basis of satisfactory evidence to be the the person (s) whose name(s) is (are) subscribed to the within instrument, acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

                                            ............................................
                                                      Notary Public

                                            BRETT P. HERMAN, ESQ.
                                            Notary Public, State Of New York
                                                 No. 02HE5022950
                                              Qualified In Kings County
                                            Commission Expires Jan. 24, 2006


NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3033

## SCHEDULE A
## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of East 7th Street a/k/a Brighton 7th Street, distant 162 feet southerly from the corner formed by the intersection of the easterly side of East 7th Street a/k/a Brighton 7th Street with the southerly side of Ocean View Avenue;

(1)  RUNNING THENCE easterly at right angles to East 7th Street, 60 feet;

(2)  THENCE southerly parallel with East 7th Street, 23 feet;

(3)  THENCE still southerly, 80.02 feet to a point 59.40 feet easterly from the easterly side of East 7th  Street measured on a line drawn at right angles thereto from a point therein, distant 31 feet southerly from the point of beginning;

(4)  THENCE westerly at right angles to East 7th Street, 59.41 feet to the easterly side of East 7th Street, 31 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY: Premises more particularly known as 3021 Brighton 7th Street, Brooklyn, New York, known as Block 8677, Lot(s) 97.

**FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

Document ID: 2003112401067004    Document Date: 06-20-2003    Preparation Date: 11-24-2003
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| REALTY-SKYLINE RESEARCH LLC | GFI MORTGAGE BANKERS, INC |
| 175 REMSEN STREET | 50 BROADWAY |
| LIGHTHOUSE LAND 03-1999 (SR) | NEW YORK, NY 10004 |
| BROOKLYN, NY 11201 | ATTN: FINAL DOC DEPT. |
| 718-306-1100 | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8677 | 97 | Entire Lot | 3021 BRIGHTON 7 STREET |

Property Type: DWELLING ONLY - 3 FAMILY

**CROSS REFERENCE DATA**

Document ID: 2003112401067003

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| GFI MORTGAGE BANKERS, INC | WASHINGTON MUTUAL BANK FA |
| 50 BROADWAY | 2210 ENTERPRISE DR |
| NEW YORK, NY 10004 | FLORENCE, SC 29501 |

**FEES AND TAXES**

| Mortgage | | | Recording Fee: $ | 52.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK

| Spec (Additional): | $ | 0.00 |
|---|---|---|
| TASF: | $ | 0.00 |
| MTA: | $ | 0.00 |
| NYCTA: | $ | 0.00 |
| TOTAL: | $ | 0.00 |

Recorded/Filed    04-20-2004 09:15
City Register File No.(CRFN):
2004000239406

*Rochelle Patrice*

*City Register Official Signature*

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



### RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 4

Document ID: 2003112401067004    Document Date: 06-20-2003    Preparation Date: 11-24-2003
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| REALTY-SKYLINE RESEARCH LLC | GFI MORTGAGE BANKERS, INC |
| 175 REMSEN STREET | 50 BROADWAY |
| LIGHTHOUSE LAND 03-1999 (SR) | NEW YORK, NY 10004 |
| BROOKLYN, NY 11201 | ATTN: FINAL DOC DEPT. |
| 718-306-1100 | |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 8677 | 97 | Entire Lot | | 3021 BRIGHTON 7 STREET |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

Document ID: 2003112401067003

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| GFI MORTGAGE BANKERS, INC | WASHINGTON MUTUAL BANK FA |
| 50 BROADWAY | 2210 ENTERPRISE DR |
| NEW YORK, NY 10004 | FLORENCE, SC 29501 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 52.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | | |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

Original received for recording      by _____

Assignment of Mortgage with Covenant -- Individual or Corporation (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT--THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

**KNOW THAT**

GFI MORTGAGE BANKERS, INC., its Successors and Assignees, having its principal office located at 50 Broadway New York, New York 10004

, assignor,

in consideration of **Three Hundred Forty-One Thousand, One Hundred and No/100 --------** -------------------------($ **341,100.00** )------------------dollars,

paid by

WASHINGTON MUTUAL BANK, FA
ITS SUCCESSORS AND/OR ASSIGNS
2210 ENTERPRISE DRIVE
FLORENCE, SC 29501

, assignee,

hereby assigns unto the assignee,

Mortgage dated the **20th** day of **June** **2003**, made by
ILIYA HONOVICH

to GFI MORTGAGE BANKERS, INC.

in the principal sum of $ **341,100.00** and recorded prior here and simultaniously herewith on the day of ____ ,20
in Liber/Reel/Volume/MB of Mortgages, page , in the office of the clerk
of the County of **KINGS** covering premises **3021 BRIGHTON 7TH STREET**
**BROOKLYN, NY 11235**

and as further described on Schedule A annexed hereto and made a part hereof.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE AS PROVIDED IN THE LOAN SALE AGREEMENT DATED BETWEEN ASSIGNOR AND ASSIGNEE.

THE ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENT OF SECTION 275 OF THE REAL PROPERTY LAW BECAUSE IT IS AN ASSIGNMENT WITHIN THE SECONDARY MORTGAGE MARKET.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors , legal representatives and assigns OF the assignee forever.

AND the assignor covenants that there is now owing upon said mortgage, without offset or defense of any kind, the principal sum of **Three Hundred Forty-One Thousand, One Hundred and No/100 --------**
-------------------------($ **341,100.00** )------------------dollars,
with interest thereon at **5.8750** per centum per annum from the **20th** day of **June** **2003**

The word "assignor" or "assignee" shall be construed as if IT read "assignors" or "assignees" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the assignor has duly executed this assignment the **20th** day of **June**
**2003**

IN PRESENCE OF:

GFI MORTGAGE BANKERS, INC.

BY: _____
ABRAHAM EISNER  VICE PRESIDENT

JFNMTASMF.NPB

STATE OF NEW YORK, COUNTY OF                                ss:

On the                    day of                    19
before me personally came

to me known to be  the individual described in and who executed the
foregoing instrument, and acknowledged that
executed the same.

---

STATE OF NEW YORK, COUNTY OF                                ss:

On the                    day of                    19
before me personally came

to me known to be  the individual described in and who executed the
foregoing instrument, and acknowledged that
executed the same.

---

STATE OF NEW YORK, COUNTY OF NEW YORK                    ss:

On the 20th          day of  June                    2003
before me, the undersigned, a Notary Public in and for said State
personally appeared Abraham Eisner personally known to me or proved
to me on the basis of satisfactory evidence to be the individual whose
name is subscribed to the within instrument and acknowledged to me
that he executed the same in his capacity and that by his signature on
the instrument, the individual(s) or the person upon behalf of which the
individual(s) acted, executed this instrument.

_____
Notary Public

DANIEL J. LIEBERMAN
Notary Public, State of New York
No. 24-4965196
Qualified in Kings County
Commission Expires Aug. 12  2003

---

STATE OF NEW YORK, COUNTY OF                                ss:

On the                    day of                    19
before me personally came

the subscribing witness to the foregoing instrument, with whom I am
personally acquainted, who, being by me duly sworn, did depose and
say that                                      resides at No..

that              knows

to be the individual described in and who executed the foregoing
instrument; that          ,said  subscribing witness, was present and
saw      execute the same; and that          , said witness at the same
time subscribed        name as witness thereto.

---

## ASSIGNMENT OF MORTGAGE
### WITH COVENANT

TITLE No.  LLS 03-1999

**GFI MORTGAGE BANKERS, INC.**
TO
WASHINGTON MUTUAL BANK, FA

SECTION 26, BLOCK 8677, LOT 97

COUNTY OR TOWN   KINGS

Recorded at request of COMMONWEALTH LAND TITLE
INSURANCE COMPANY

RETURN BY MAIL TO:

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS

GFI MORTGAGE BANKERS, INC.
50 BROADWAY
NEW YORK, NEW YORK 10004
ATTN: FINAL DOC DEPARTMENT

LOAN No.

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

JFVMRTASNB.HP2

## SCHEDULE A
## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City of New York, bounded and described as follows;

BEGINNING at a point on the easterly side of East 7th Street a/k/a Brighton 7th Street, distant 162 feet southerly from the corner formed by the intersection of the easterly side of East 7th Street a/k/a Brighton 7th Street with the southerly side of Ocean View Avenue;

(1) RUNNING THENCE easterly at right angles to East 7th Street, 60 feet;

(2) THENCE southerly parallel with East 7th Street, 23 feet;

(3) THENCE still southerly, 80.02 feet to a point 59.40 feet easterly from the easterly side of East 7th Street measured on a line drawn at right angles thereto from a point therein, distant 31 feet southerly from the point of beginning;

(4) THENCE westerly at right angles to East 7th Street, 59.41 feet to the easterly side of East 7th Street, 31 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY: Premises more particularly known as 3021 Brighton 7th Street, Brooklyn, New York, known as Block 8677, Lot(s) 97.

FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

### RECORDING AND ENDORSEMENT COVER PAGE    PAGE 1 OF 4

| | |
|---|---|
| **Document ID:** 2015100800413001 | **Document Date:** 12-12-2014 | **Preparation Date:** 10-08-2015 |
| **Document Type:** ASSIGNMENT, MORTGAGE | | |
| **Document Page Count:** 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| PEIRSON PATTERSON, LLP<br>4400 ALPHA RD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM | PEIRSONPATTERSON, LLP<br>13750 OMEGA ROAD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 8677 | 97 | Entire Lot | 3021 BRIGHTON 7 STREET |

**Property Type:** DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2004000239405

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| WASHINGTON MUTUAL BANK FA<br>1601 BRYAN STREET<br>DALLAS, TX 75201 | JPMORGAN CHASE BANK NATIONAL ASSOCIATION<br>700 KANSAS LANE, MC 8000<br>MONROE, LA 71203 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| NYCTA: | $ | 0.00 | Recorded/Filed    02-09-2016 14:40 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | **2016000044414** | |
| Recording Fee: | $ | 47.00 | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | |

After recording please mail to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

*[Space Above This Line For Recording Data]*

Loan No. 
FNMA Loan

# NEW YORK ASSIGNMENT OF MORTGAGE

For Value Received, THE FEDERAL DEPOSIT INSURANCE CORPORATION, A CORPORATION ORGANIZED AND EXISTING UNDER AN ACT OF CONGRESS (FDIC), WHOSE ADDRESS IS 1601 BRYAN STREET, DALLAS, TX 75201, AND ACTING IN ITS RECEIVERSHIP CAPACITY AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, the undersigned holder of a Mortgage (herein "Assignor"), whose address is 1601 BRYAN STREET, DALLAS, TX 75201 does hereby grant, sell, assign, transfer and convey, unto JPMorgan Chase Bank, National Association, (herein "Assignee"), whose address is 700 KANSAS LANE MC 8000, MONROE, LA 71203, all beneficial interest under a certain Mortgage dated June 20, 2003 and recorded on April 20, 2004, made and executed by ILIYA HONOVICH, to and in favor of GFI MORTGAGE BANKERS, INC., upon the following described property situated in KINGS County, State of New York:

Property Address: 3021 BRIGHTON 7TH STREET, BROOKLYN, NY 11235

**BOROUGH:BROOKLYN BLOCK:8677 LOTS:97**

such Mortgage having been given to secure payment of Three Hundred Forty One Thousand One Hundred and 00/100ths ($341,100.00), which Mortgage is of record in Book, Volume or Liber No. N/A, at Page N/A (or as No. 2004000239405), in the Office of the County Clerk or Register of KINGS County, State of New York. .

**Assignment:** GFI MORTGAGE BANKERS, INC to WASHINGTON MUTUAL BANK, FA dated 06/20/2003 and recorded 04/20/2004 as Instrument No. 2004000239406.

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

This Assignment is intended to further memorialize the transfer that occurred by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. §1821(d)(2)(G)(i)(II).

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

New York Assignment of Mortgage
JPMorgan Chase Bank N.A. Project          Page 1 of 2                    Rev. 02/14



IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
_12 - 12 - 14_.

Assignor:
**JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, AS ATTORNEY IN FACT FOR THE
FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER OF WASHINGTON MUTUAL BANK
F/K/A WASHINGTON MUTUAL BANK, FA**

By: _____
        Leonard N James

Its: _____
        Vice President

## ACKNOWLEDGMENT

State of Louisiana                          §
                                            §
Parish of Ouachita                          §

On the _12th_ day of _Dec_ in the year _2014_ before me, the undersigned, personally
appeared **Leonard N James** personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed
the instrument.

_____
Signature of Individual Taking Acknowledgment

**Melanie K. Shrell**
Printed Name          NOTARY PUBLIC

_____
Office of Individual Taking Acknowledgment

(Seal)          My Commission Expires:     **Lifetime**

**Return Address:**

Washington Mutual Bank
Office of the Corporate Secretary
1301 2nd Ave., WMC3501
Seattle, WA 98101



**20081003000790**
COOK                    AFF        44.00
PAGE-001 OF 003
10/03/2008 13:11
KING COUNTY, WA

---

Please print or type information **WASHINGTON STATE RECORDER'S Cover Sheet** (RCW 65.04)

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document **must** be filled in)
1. Affidavit of the Federal Deposit
   Insurance Corporation                      2. _____

3. _____            4. _____

---

**Reference Number(s) of Documents assigned or released:**

Additional reference #'s on page _____ of document

---

**Grantor(s)** Exactly as name(s) appear on document
1. Washington Mutual Bank, formerly known
   as Washington Mutual Bank, FA _____, _____
   Federal Deposit Insurance
2. Corporation _____, _____

Additional names on page _____ of document.

---

**Grantee(s)** Exactly as name(s) appear on document

1. JPMorgan Chase Bank, National Association

2. _____, _____

Additional names on page _____ of document.

---

**Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)

_____

_____

_____

Additional legal is on page _____ of document.

---

**Assessor's Property Tax Parcel/Account Number**
assigned                                    ☐ Assessor Tax # not yet

---

The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document
to verify the accuracy or completeness of the indexing information provided herein.

---

"I am signing below and paying an additional $50 recording fee (as provided in RCW 36.18.010 and
referred to as an emergency nonstandard document), because this document does not meet margin and
formatting requirements. Furthermore, I hereby understand that the recording process may cover up or
otherwise obscure some part of the text of the original document as a result of this request."

_____
                                    Signature of Requesting Party

Note to submitter: Do not sign above nor pay additional $50 fee if the document meets margin/formatting requirements

Recording Requested By and
When Recorded Mail to:
```
Washington Mutual Bank
Office of the Corporate Secretary
1301 2nd Ave., WMC3501
Seattle, WA  98101
```

---

**Space Above for Recording Information**

## AFFIDAVIT OF THE
## FEDERAL DEPOSIT INSURANCE CORPORATION

I, Robert C. Schoppe, having been first duly sworn, hereby make this Affidavit and say that:

1.      I am an authorized representative of the Federal Deposit Insurance Corporation, an agency of the United States government (the "FDIC").

2.      On September 25, 2008, Washington Mutual Bank, formerly known as Washington Mutual Bank, FA ("Washington Mutual"), was closed by the Office of Thrift Supervision and the FDIC was named receiver.

3.      As authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C § 1821(d)(2)(G)(i)(II), the FDIC, as receiver of Washington Mutual, may transfer any asset or liability of Washington Mutual without any approval, assignment, or consent with respect to such transfer.

4.      Pursuant to the terms and conditions of a Purchase and Assumption Agreement between the FDIC as receiver of Washington Mutual and JPMorgan Chase Bank, National Association ("JPMorgan Chase"), dated September 25, 2008 (the "Purchase and Assumption Agreement'), JPMorgan Chase acquired certain of the assets, including all loans and all loan commitments, of Washington Mutual.

5.      As a result, on September 25, 2008, JPMorgan Chase became the owner of the loans and loan commitments of Washington Mutual by operation of law.

Executed this 2ND day of October, 2008 in Seattle, King County, Washington.

By:
Print Name: Robert C. Schoppe
Title: Receiver In Charge for FDIC as
Receiver of Washington Mutual Bank

-1-

## NOTARY'S ACKNOWLEDGMENT

STATE OF WASHINGTON    )
                                ) SS.
COUNTY OF KING            )

      I certify that I know or have satisfactory evidence that Robert C. Schoppe is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the Receiver In Charge of the Federal Deposit Insurance Corporation, as Receiver of Washington Mutual Bank to be the free and voluntary act of such party for the uses and purposes mentioned therein.

      Dated this 2nd day of October, 2008.

Notary Public in and for the State of
Washington, residing in _____
My commission expires: 11/7/10

STATE OF WASHINGTON }
County of King

The Director of Records & Licensing, King County, State of
Washington and exofficio Recorder of Deeds and other
instruments, do hereby certify the foregoing copy has been
compared with the original instrument as the same appears
on file and of record in the office and that the same is a true
and perfect transcript of said original and of the whole thereof,
Witness my hand and official seal this _____ day
of_____ 20_____

OCT 0 3 2008

Director of Records & Licensing

By _____
                              Deputy

R. Harper

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER<br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. |  |
| --- | --- |

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 3** |
| --- | --- | --- |

**Document ID:** 2015100800413002    Document Date: 12-12-2014    Preparation Date: 02-09-2016
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 2

| PRESENTER: | RETURN TO: |
| --- | --- |
| PEIRSON PATTERSON, LLP<br>4400 ALPHA RD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM | PEIRSONPATTERSON, LLP<br>13750 OMEGA ROAD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
| --- | --- | --- | --- | --- |
| BROOKLYN | 8677 | 97 | Entire Lot | 3021 BRIGHTON 7 STREET |

Property Type: DWELLING ONLY - 3 FAMILY

**CROSS REFERENCE DATA**

CRFN:   2004000239405

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
| --- | --- |
| JPMORGAN CHASE BANK NATIONAL ASSOCIATION<br>700 KANSAS LANE, MC 8000<br>MONROE, LA 71203 | FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>14221 DALLAS PARKWAY, SUITE 1000<br>DALLAS, TX 75254 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
| --- | --- | --- | --- | --- |
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 47.00 | |
| Affidavit Fee: | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed        02-09-2016 14:40
City Register File No.(CRFN):
                    2016000044415

*City Register Official Signature*

After recording please mail to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

------------------------------------[Space Above This Line For Recording Data]------------------------------------

Loan No.█████████
FNMA Loan█████████

# NEW YORK ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Mortgage (herein "Assignor"), whose address is **700 KANSAS LANE MC 8000, MONROE, LA 71203** does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS**, (herein "Assignee"), whose address is **14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254**, all beneficial interest under a certain Mortgage dated June 20, 2003 and recorded on April 20, 2004, made and executed by **ILIYA HONOVICH**, to and in favor of **GFI MORTGAGE BANKERS, INC.**, upon the following described property situated in **KINGS** County, State of New York:
Property Address: **3021 BRIGHTON 7TH STREET, BROOKLYN, NY 11235**

**BOROUGH:BROOKLYN BLOCK:8677 LOTS:97**

such Mortgage having been given to secure payment of **Three Hundred Forty One Thousand One Hundred and 00/100ths ($341,100.00)**, which Mortgage is of record in Book, Volume or Liber No. N/A, at Page N/A (or as No. 2004000239405), in the Office of the County Clerk or Register of KINGS County, State of New York. .

**Assignment: GFI MORTGAGE BANKERS, INC to WASHINGTON MUTUAL BANK, FA dated 06/20/2003 and recorded 04/20/2004 as Instrument No. 2004000239406.**

**Assignment: Washington Mutual Bank, FA to JPMorgan Chase Bank, National Association to be recorded concurrently herewith**

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.**

New York Assignment of Mortgage
JPMorgan Chase Bank N.A. Project█████          Page 1 of 2          ██████████ev. 02/14



IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
__12 - 12 - 14__.

Assignor:
JPMorgan Chase Bank, National Association

By: _____

**Leonard N James**

Its: _____
Vice President

**ACKNOWLEDGMENT**

State of Louisiana                        §
                                          §
Parish of Ouachita                        §

On the __12th__ day of __Dec__ in the year __2014__ before me, the undersigned, personally
appeared __Leonard N James__, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed
the instrument.

_____
Signature of Individual Taking Acknowledgment

**Melanie K. Shrell**

_____
Printed Name

**NOTARY PUBLIC**

_____
Office of Individual Taking Acknowledgment

(Seal)                        My Commission Expires:        **Lifetime**

Exhibit "B"

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
IN RE:                                                      Chapter 13
Iliya Honovich,                                             Case# 17-41789-nhl
                                    Debtor.
-------------------------------------------------------------x

---

## RELIEF FROM STAY – REAL ESTATE AND COOPERATIVE APARTMENTS

---

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: <u>3021 Brighton 7th Street, Brooklyn, NY 11235</u>

2. LENDER NAME: <u>Federal National Mortgage Association ("Fannie Mae")</u>

3. MORTGAGE DATE: <u>06/20/2003</u>

4. POST-PETITION PAYMENT ADDRESS: <u>P. O. Box 1047Hartford, CT 06143-1047</u>

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF FILING THE MOTION: $<u>517,407.27 as of 7/26/17</u>
(*THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.*)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: <u>$400,000.00</u>

7. SOURCE OF ESTIMATED MARKET VALUE: <u>Schedule A/B</u>

### STATUS OF THE DEBT AS PER POC FILED 7/24/17.

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS PER POC FILED 7/24/17.

| | |
|---|---|
| A. TOTAL: | $508,236.65 |
| B. PRINCIPAL: | $309,174.62 |
| C. INTEREST: | $135,334.67 |
| D. ESCROW (TAXES AND INSURANCE): | $57,133.11 |
| E. FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $0.00 |

| | | |
|---|---|---|
| F. PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): | | $3,028.30 |
| G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): | | $161.40 |

9. CONTRACTUAL INTEREST RATE: 5.875%
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM.. STATE THE EXHIBIT NUMBER HERE: N/A)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: BPO Fees: $85.00; Foreclosure Costs: $1,690.00; Property Inspection Fees: $1,069.55; Title Costs: $560.00

*(IF ADDIITONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM.  STATE THE EXHIBIT NUMBER HERE: N/A)*

## AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: No Post-Petition Payments Received

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: 3 PAYMENTS.

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 5/1/2017 | $2,650.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/1/2017 | $2,650.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/1/2017 | $2,732.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTALS | $8,033.86 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A. TOTAL:         $1,031.00

    B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION:   $850.00

    C. FILING FEE IN CONNECTION WITH THIS MOTION:   $181.00

    D. OTHER POST-PETITION ATTORNEYS' FEES:   $0.00

    E. POST-PETITION INSPECTION FEES:   $0.00

    F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:   $0.00

    G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:   $0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:                    $0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S
ACCOUNT AND NOT LISTED ABOVE:                    $0.00

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH
THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A)*

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT ___A___.)

(2)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT ___A__.)

(3)    COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT ___A__.)

## DECLARATION AS TO BUSINESS RECORDS

I, _Shannon Duran_ , THE _Bankruptcy Specialist_ OF Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America THE MOVANT HEREIN, DECLARE PURSUANT 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE) IS DERIVEDFROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THEMATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT <CITY/TOWN>, ____ <STATE> _Beaverton, Oregon_
ON THIS _7_ DAY OF
_August_   2017

<NAME> SHANNON Duran
<TITLE> Bankruptcy Specialist
Seterus, Inc., as authorized/subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America
14523 SW Millikan Way #200
Beaverton, OR 97005

## DECLARATION

I, _Shannon Duran_ , THE _Bankruptcy Specialist_ OF Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America, THE MOVANT HEREIN, DECLARE PURSUANT 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT <CITY/TOWN>, ____ <STATE> _Beaverton, Oregon_
ON THIS _7_ DAY OF
_August_   2017

SHANNON Duran, Bankruptcy Specialist                <NAME>
                                                    <TITLE>
Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America
14523 SW Millikan Way #200
Beaverton, OR 97005